UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| JESSICA MARIE ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. |
| v. | ) | 5:17-cv-00340-JMH |
| | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| VIRGIL RUCKER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*

This case presents a human tragedy. Plaintiff Jessica Allen lost her child and her liberty when she was wrongfully imprisoned in connection with her infant daughter's death. Allen spent more than three years behind bars before Kentucky courts overturned her convictions of criminal abuse in the first degree and complicity to first-degree manslaughter.

Allen believes that Defendant Virgil Rucker, a state police officer, was at least partially responsible for her misfortune. She claims Rucker fabricated evidence, falsified testimony, conducted a shoddy investigation, and pushed for her prosecution. So she has filed this malicious prosecution lawsuit seeking monetary damages under 42 U.S.C. § 1983 and state law.

But to bring her lawsuit, Allen must show that Rucker acted without probable cause. And when a grand jury issues an

1

indictment, that indictment presumptively establishes probable cause. In some situations, a plaintiff can rebut the presumption, but in the absence of specific factual allegations against Rucker, Allen has failed to do so. Thus, this Court must dismiss her Complaint, and for the reasons stated herein Defendant's Motion to Dismiss [DE 6] is **GRANTED**.

## I. FACTS

Jessica Allen ("Allen") gave birth to her daughter, Kaylee Buchanan, in April 2008. [DE 1, p. 3, ¶15]. Three months later, Kaylee was dead. [*Id.* at p. 6, ¶30]. This case involves Allen's criminal prosecution after Kaylee's death and whether state police officer Virgil Rucker ("Rucker") violated Allen's Fourth Amendment rights in the process. The facts in this case come from Allen's Complaint, which the Court assumes to be true for the purposes of the present motion.

Allen and her boyfriend, Terry Buchanan ("Buchanan"), moved in together in April 2007. [DE 1, p. 3, ¶14]. Months later, the couple learned Allen was pregnant, and she gave birth in April 2008. [*Id.* at ¶15]. Allen returned to work three months after Kaylee's birth, and Kaylee stayed with a babysitter from about 2:30 p.m. to 5:30 p.m. each day. [*Id.* at ¶16]. The babysitter—identified in the complaint only as "Mrs. Meade"—described Kaylee

as "normal and healthy" and never noticed any strange marks or bruising on Kaylee. [*Id*. at p. 4, ¶17].

Shortly after Allen returned to work, she and Buchanan took Kaylee, and Allen's other son, Braden, to a campsite for the day. [*Id.* at ¶18]. Allen's mother and other family members joined the trip, during which the family fished and enjoyed the outdoors. [*Id.*]. The family spent hours together before departing at about 2 or 3 p.m. [*Id.*] Kaylee "seemed happy and normal" during the trip. [*Id.*].

Upon returning home, Allen fed Kaylee a bottle and laid her in a bassinette before cooking dinner. [*Id.* at ¶20]. At some point, Kaylee begin to stir and Allen asked Buchanan to watch Kaylee while she showered and spent time in a tanning bed. [*Id.* at ¶21]. After showering, but before entering the tanning bed, Allen heard Kaylee giggle from the other room. [*Id.*]. She then entered the tanning bed. [*Id.*].

While tanning, Allen heard Buchanan tell Braden to go to bed and she observed a shadow pass by the tanning room. [*Id.* at p. 5, ¶22]. She assumed Buchanan was putting Braden to bed. [*Id.*]. She then heard what she described as "not a normal cry" from Kaylee, but Allen stayed in the tanning bed and did not check on Kaylee. [*Id.* at ¶23]. Kaylee eventually stopped crying. [*Id.*].

As Allen finished tanning, Buchanan ran into the tanning room and lifted the tanning bed lid; he was holding a limp and unresponsive Kaylee in his harms. [*Id.* at ¶24]. Allen attempted rescue breaths, chest compressions, and the Heimlich Maneuver. [*Id.* at ¶25]. A volunteer firefighter then arrived and began rescue breaths. [*Id.* at ¶26]. Kaylee had a slight pulse when she arrived at the Fleming County Emergency Room. [*Id.* at ¶27]. The doctor noticed irregular symptoms, and a CT scan showed swelling and blood around Kaylee's brain. [*Id.* at pp. 5-6, ¶28]. Kaylee was pronounced brain dead on July 23, 2008; an autopsy showed she died of blunt force injury to the head. [*Id.* at ¶30]. Kaylee also had a muscle injury on her right leg, which a doctor said would have occurred eight to ten days prior to her x-rays in the emergency room. [*Id.* at ¶¶30-32].

A Fleming County Grand Jury indicted Allen, and she was tried and convicted of criminal abuse in the first degree for the leg injury and complicity to first-degree manslaughter for failing to prevent Buchanan from inflicting the fatal injury to Kaylee's head. [*Id.* at ¶33]. Several years of appeals followed. And eventually, the Kentucky Court of Appeals reversed both of Allen's convictions. [*Id.* at p.7, ¶37]. The appeals court reasoned there was "no evidence" of the requisite mens rea on the complicity charge. [*Id.* at ¶38]. The court also reversed the criminal abuse charge. [*Id.*

at p. 8, ¶40]. The Fleming Circuit Court dismissed the charges against Allen on September 27, 2016. [*Id.* at ¶42].

Allen then filed this lawsuit seeking damages against Rucker. She claims Rucker "had no more information than that which was presented at trial when he made, influence, and participated in the decision to prosecute Ms. Allen." [*Id.* at ¶41]. Allen alleges Rucker investigated witnesses in a manner which was intimating, threatened witnesses and coerced them to give false testimony, omitted material exculpatory facts from his investigation and report, presented false or misleading information in the application and affidavit submitted to obtain a search warrant, and presented false and misleading evidence to prosecutors and the grand jury. [*Id.* at pp 8-9, ¶¶43, 47-48]. This, Allen argues, amounts to a malicious prosecution in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments. [*Id.* at ¶49]. She sued under 42 U.S.C. § 1983 and state law.

Rucker has filed a Motion to Dismiss for failure to state a claim under Rule 12(b)(6). [DE 6]. Allen responded [DE 10] and Rucker replied [DE 14] making this matter ripe for review.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint. A complaint must contain a "short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court views the Complaint in the light most favorable to the plaintiff and must accept as true all well-pleaded factual allegations contained within it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 A "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court need not accept as true any legal conclusions. *Id*.

### III. ANALYSIS

"Individuals have a clearly stablished Fourth Amendment right to be free from malicious prosecution." *King v. Harwood*, 852 F.3d 568, 582-83 (6th Cir. 2017). Thus, the "Sixth Circuit 'recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment'" that "encompasses investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir.

6

2006)). A plaintiff in a malicious prosecution case must prove four elements: "(1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *King*, 852 F.3d at 580. Despite its name, "malicious prosecution" does not require a showing of malice and "might more aptly be called 'unreasonable prosecutorial seizure.'" *Id.* (quoting *Sykes*, 625 F.3d at 310).

The crux of Defendant's Motion to Dismiss is the second element. Rucker claims Allen has failed to state a claim for relief because she has failed to adequately plead a lack of probable cause. The Court will now address this argument.

**A. Probable Cause**

Rucker argues that the grand-jury indictment created a presumption of probable cause that Allen has failed to rebut. And because the burden is on the plaintiff to plead a *lack* of probable cause, Rucker argues Allen has failed to state a claim.

A grand-jury indictment creates a presumption of probable cause in malicious prosecution cases. *See, e.g.*, *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). The circuit long

7

followed the rule that "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Barnes*, 449 F.3d at 716 (quoting *Higgason*, 288 F.3d at 877). An exception to this rule existed where "'defendants knowingly present false testimony to the grand jury' to obtain an indictment." *Bickerstsaff v. Lucarelli*, 830 F.3d 388, 398 (6th Cir. 2016) (quoting *Martin v. Mauer*, 581 F. App'x 509, 511 (6th Cir. 2014)). A plaintiff could also rebut the presumption by showing defendant testified with a reckless disregard for the truth. *Bickerstsaff*, 830 F.3d at 398. Thus, under this standard, a plaintiff could rebut the "conclusive" grand-jury-probable-cause presumption only when he showed that the defendant knowingly or recklessly presented false testimony to the grand jury. *Id*.

Plaintiff and Defendant dispute whether Allen has met this standard. [DE 6-1, pp. 11-12; DE 10, pp. 8-11; DE 14, pp. 5-11]. Plaintiff argues that during Rucker's grand-jury testimony Rucker improperly stated Allen had "probably" been drinking, despite having no evidence of alcohol use. [DE 10, p. 10]. Plaintiff also claims Rucker testified that, while at the hospital, Allen did not wish to speak to police. [*Id*. at pp. 9-10]. This statement, Allen argues, violates her Fifth Amendment right to silence because the statement raises an inference of guilt. [*Id*. at p. 9]. Defendant argues that Rucker's testimony was not false because Allen *did*

8

decline to speak to police at the hospital and Rucker further stated "I don't know" when asked about alcohol consumption. [DE 14, pp8-9].

The parties' argument over this standard is immaterial because it is not the law.

Recent cases from the Sixth Circuit and Supreme Court have altered the grand-jury indictment rule. First, the Supreme Court in *Rehberg v. Paulk*, 566 U.S. 356 (2012) established that a grand-jury witness enjoys absolute immunity in § 1983 cases. Thus, as the Sixth Circuit has since acknowledged, *Rehberg* forecloses the possibility of using grand-jury testimony to rebut probable cause. *See King*, 852 F.3d at 584 ("*Rehberg* made clear that absolute immunity is to be afforded to *all* grand-jury witnesses, even law-enforcement officers who have 'conspired to present false testimony.'"). Accordingly, Rucker's grand-jury testimony is beside the point because that testimony cannot be the basis for liability.

This does not mean, however, that a grand-jury indictment shields officers from all malicious prosecution claims. In *Rehberg,* the Supreme Court noted that conduct "outside of the grand jury room"—such as falsifying affidavits—would not enjoy the same absolute immunity. 566 U.S. at 370, n.1. This could apply to officers who "set[] the wheels of government in motion by

9

instigating a legal action." 566 U.S. at 371 (quoting *Wyatt v. Cole*, 504 U.S. 158, 164–65 (1992)). And in *Manuel v. Joliet*, 137 S.Ct. 911 (2017), the Supreme Court saw "no principled reason" to find that a grand-jury indictment expunges a Fourth Amendment claim. 137 S.Ct. at 920, n.8. "Nothing in the nature of the legal proceeding establishing probable cause makes a difference for purposes of the Fourth Amendment." *Id.* "Whatever its precise form, if the proceeding is tainted"—whether a preliminary hearing or grand jury indictment—"and the result is that probable cause is lacking," then plaintiff may pursue a Fourth Amendment claim. *Id.*

Citing *Manuel*, the Supreme Court recently granted certiorari, vacated the judgment, and remanded a Sixth Circuit case decided only two months before *Manuel*. *Sanders v. Jones*, 138 S.Ct. 640 (2018). In the original Sixth Circuit case, *Sanders v. Jones*, 845 F.3d 721 (6th Cir. 2017), the circuit found "it is well-established in this circuit that an indictment by a grand jury conclusively determines the existence of probable cause unless the defendant-officer 'knowingly or recklessly presented false testimony to the grand jury to obtain the indictment.'" 845 F.3d at 732 (quoting *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015)). The court further explained that *Rehberg* eliminated plaintiff's ability to rebut probable cause because grand-jury testimony was now untouchable. *Id.* at 733. (ruling *Rehberg* "effectively defeats" plaintiff's malicious prosecution claim because plaintiff "cannot

overcome the presumption of probable cause without using [the officer's] absolutely immune grand jury testimony."). This created a "harsh" consequence by "largely foreclosing malicious prosecution claims where the plaintiff was indicted." *Id.* at 734.

The circuit has since eased the "harsh" result recognized in *Sanders*. In *King v. Harwood*, the court created a new exception allowing plaintiffs indicted by a grand jury to rebut probable cause in malicious prosecution cases where:

> (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury), the presumption that the grand-jury indictment is evidence of probable cause is rebuttable and not conclusive.
>
> 852 F.3d at 587-88.

The court reasoned that this exception fits *Rehberg*'s framework by allowing actions against "complaining witnesses" (as opposed to "testifying witnesses") who "set the wheels of government in motion by instigating an action." *Id*. at 588 (quoting *Rehberg*, 556 U.S. at 370-73). *King* further explains that the new exception aligns with the Supreme Court's decision in *Manuel* and circuit precedent. *Id*. at 588-89. But *King* did not

disturb the absolute immunity afforded to officers in malicious prosecution cases "*to the extent that [Plaintiff's] claims are based on [Defendant's] grand-jury testimony*." *Id*. at 586 (emphasis in original). Accordingly, plaintiffs cannot use grand-jury testimony to rebut probable cause. *Id*. But plaintiffs may use evidence from *outside* the grand-jury room to rebut probable cause. *Id.*

Thus, the analysis does not begin and end with grand-jury testimony. To the contrary, "actions that are prior to, and independent of, [an officer's] grand-jury testimony" may rebut the probable-cause presumption. *Id*. at 586. For example, "an officer's actions of wrongly setting a prosecution in motion or falsifying or fabricating evidence may be material to the grand-jury indictment *even though* they do not constitute 'testimony' or related preparation for testimony." *Id.* at 590 (emphasis in original). "[E]vidence of an officer's actions prior to and independent of his grand-jury testimony may call into question the presumption of probable cause created by an indictment even if a malicious-prosecution plaintiff may not bring in evidence of the grand-jury testimony *itself* to do so." *Id.* (emphasis in original). As such, a grand-jury indictment in the Sixth Circuit is no longer "a talisman that always wards off a malicious-prosecution claim." *Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017). A plaintiff can overcome the grand-jury-indictment-created probable cause

through "pre-indictment nontestimonial acts that were material to the prosecution." *Id*.

As such, to state a claim for malicious prosecution in a case where a grand-jury indictment has been issued, a plaintiff must plead specific facts showing a defendant-officer made false statements or fabricated evidence that set the prosecution in motion. Without more, a plaintiff cannot rebut the presumption of probable cause established by a grand-jury indictment. *King*, 852 F.3d at 587-88.

A trio of cases helps illustrate the pleading requirements. First, in *Meeks v. Larsen*, 611 F. App'x 277 (6th Cir. 2015), the circuit dismissed a malicious prosecution case when the complaint merely stated that defendant "caused to be instigated a grand jury investigation which utilized unlawfully seized evidence and false and misleading information." *Id*. at 283. Plaintiffs made "no effort to identify what [the] false and misleading information was." *Id*. at 282. These "vague and conclusory assertions" were "without factual support" and thus plaintiffs failed to adequately plead a cause of action. *Id*. at 283. Second, in *Bickerstaff v. Lucarelli*, 830 F.3d 388 (6th Cir. 2016), the circuit dismissed a malicious prosecution complaint stating that the grand jury "was not presented truthful information by and/or was blocked by Defendants from knowing all of the material facts involving the

13

allegations against Plaintiff." *Id*. at 398. There, plaintiff failed to identify specific, factual information supporting his claim. The "bare declaration of impropriety" was "vague and conclusory" and the court held dismissal was proper under Rule 12(b)(6). *Id.* And in *Rapp v. Putman*, 644 F. App'x 621 (6th Cir. 2016), the circuit upheld dismissal of a malicious prosecution claim where the plaintiff failed to identify any specific false or misleading statements made by the defendant-officers. *Id*. at 627. There, plaintiff's complaint stated that "statements made by Defendant [officer] were false and Defendant [officer] was aware that the statements were false when made." *Id*. Plaintiff further alleged that the officer "inserted information in her report to the prosecutor that was false or exaggerated and misleading." *Id*. Although plaintiff *claimed* the officers presented false information to the prosecutor, the plaintiff "did not identify what portions were false or misleading." *Id.* The court ruled that "bare assertions that [plaintiff] was prosecuted based on 'false information' and 'without probable cause' are legal conclusions, not specific factual allegations necessary to survive a motion to dismiss." *Id*.

True, these cases were decided before the *King* exception had been announced. But *King* did not alter the federal pleading standard; it established a new route around the probable cause presumption created by a grand jury indictment. To take that

14

route, a plaintiff must show that the officer made false statements or fabricated evidence, and those actions set the wheels of prosecution in motion. *King*, 852 F.3d at 587-89. And to plead that a defendant-officer made false statements or fabricated evidence, a plaintiff must identify *specific* instances of such false statements or fabricated evidence. *See Bickerstaff*, 830 F.3d at 398; *Rapp*, 644 F. App'x at 627; *Meeks*, 611 F. App'x at 282-82. In other words, a plaintiff must tell the court what *particular* evidence was fabricated or what *particular* testimony was falsified. General statements alleging false, misleading, or fabricated evidence, without more, amount to vague conclusory allegations, "not specific allegations necessary to survive a motion to dismiss." *Rapp*, 644 F. App'x at 627; *Meeks*, 611 F. App'x at 282.

Several Sixth Circuit cases decided after *King* support this approach. For example, in *Miller v. Maddox*, 886 F.3d 386 (6th Cir. 2017), a plaintiff survived summary judgment where he claimed an officer lied about the plaintiff speeding and resisting arrest. *Id*. at 392. There, plaintiff identified *specific* false statements that an officer made in an affidavit. *Id.* Similarly in *Mills v. Barnard*, 869 F.3d 473 (6th Cir. 2017), the plaintiff pointed to a specific DNA report that exculpated plaintiff, but police considered the report "inconclusive." *Id.* at 480-81. Because the officer falsely labeled the DNA report, the plaintiff could

15

overcome the grand-jury presumption of probable cause. *Id.* at 481. In *Jones v. Clark County*, 690 F. App'x 334 (6th Cir. 2017), a malicious prosecution case proceeded—despite a grand-jury indictment—after the police failed to investigate critical evidence that would have exculpated plaintiff. *Id.* at 334-35. And in *King*, the plaintiff overcame the grand-jury indictment by claiming the defendant-officer made reckless false statements in an investigative report. 852 F.3d at 591. In each case, the plaintiffs identified *specific* falsehoods, omissions, or fabricated evidence. And in each case, the claims survived.

Here, Allen's complaint fails to plausibly state a claim because she fails to adequately plead a lack of probable cause. Plaintiff does not identify *any* specific instances of Rucker presenting false testimony, fabricating evidence, making misleading statements, or omitting exculpatory information. Of course, at this stage, Allen need not detail every instance of Rucker's alleged wrongdoing. But she must point to *something*. Instead, Allen provides a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. This "will not do." *Id.*

Allen claims Rucker "intentionally, or acting with deliberate indifference employed improper tactics that resulted in Plaintiff's being charged and convicted of child abuse and

16

complicity to manslaughter." [DE 1, p. 1, ¶2]. But Allen does not identify *any* specific improper tactics Rucker used.

Allen alleges Rucker "concealed facts that were consistent with Plaintiff's innocence" and he "conducted an investigation in which Defendant fabricated conclusions that were both unsupported by the data, failed to and/or attempted to suppress exculpatory evidence." [DE 1, pp. 1-2, ¶2]. But Allen does not tell us what facts Rucker concealed and fabricated, and she never points to any specific exculpatory evidence Rucker suppressed.

Allen next contends Rucker investigated "witnesses in a manner which was intimidating and threatening in order to coerce them to give false testimony." [DE 1, p. 8, ¶43], but she does not tell us how. She claims Rucker "ommitt[ed] from his investigation and reports material facts which tended to show Ms. Allen's innocence, by presenting false or misleading information in the application and affidavit submitted to obtain a search warrant and by presenting false and materially misleading evidence to prosecutors and to the grand jury." [DE 1, pp. 8-9, ¶43]. But she never identifies *what* Rucker omitted from his investigation and reports. She never tells us *what* false or misleading information the affidavit for a search warrant contained—indeed, she does not tell us anything about the affidavit. And she fails

17

to identify *any* specific misleading evidence Rucker might have presented to prosecutors.

In sum, although Allen *says* Rucker employed improper tactics, concealed facts, suppressed evidence, omitted material facts, presented false information, and misled prosecutors, Allen fails to explain any of her allegations. She does not point to a single *specific* instance of any of these things happening. Simply saying so does not make it true. Nor does it satisfy the federal pleading standard. Even in her response to Rucker's Motion to Dismiss, Allen fails to include any specific factual allegations supporting her claims.

Without *any* factual allegations, Allen's claims fail. Her complaint reads precisely like those in *Meeks, Bickerstaff*, and *Rapp*: general, vague, and conclusory allegations unsupported by specific facts. Without any particular facts, these statements amount to legal conclusions and do not provide a basis for surviving a motion to dismiss. *Rapp*, 644 F. App'x at 627.

### B. State Malicious Prosecution Claim

The state-law malicious prosecution claim also fails. Kentucky follows a similar standard as federal law. The elements for malicious prosecution are: "1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff;

18

2) the defendant acted without probable cause; 3) the defendant acted with malice, which in the criminal context, means seeking to achieve a purpose other than brining an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based; 4) the proceeding, except in ex parte civil actions, terminated in favor of the person against whom it was brought; and 5) the plaintiff suffered damages as a result of the proceeding." *Martin v. O'Daniel*, 607 S.W.3d 1, 11-12 (Ky. 2016). By requiring a showing of malice, the state-law malicious prosecution claim requires even more than the federal cause of action. *See King*, 852 F.3d at 580 (recognizing that "malice" is not an element in the Sixth Circuit).

In Kentucky, "where there is a specific finding of probable cause in the underlying criminal action . . . a malicious prosecution action cannot be maintained." *Broaddus v. Campbell*, 911 S.W.2d 281, 283 (Ky. Ct. App. 1995). "When a grand jury . . . finds an indictment to be a true bill, the presumption is prima facie that . . . the prosecutor had reasonable grounds for the prosecution." *Davidson v. Castner-Knott Dry Goods Co.*, 202 S.W.3d 597, 607 (Ky. Ct. App. 2006) (quoting *Conder v. Morrison*, 121 S.W.2d 930, 931 (1938)). "[A] grand jury indictment raises a presumption of probable cause," that must be rebutted by the plaintiff. *Davidson*, 202 S.W.3d at 607. Like its federal

counterpart, the Kentucky malicious prosecution claim in this case fails because Allen has not pleaded facts to rebut the presumption of probable cause. *See Hall v. City of Williamsburg*, No. 6:16-304-DCR, 2017 WL3668113, at *10 (E.D. Ky. Aug. 24, 2017) (recognizing the overlap between state and federal malicious prosecution claims). Accordingly, this claim is dismissed.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** that:

(1) Defendant's Motion to Dismiss [DE 6] is **GRANTED;**

(2) All of Plaintiff's claims against Defendant are **DISMISSED WITH PREJUDICE;**

(3) The clerk **SHALL STRIKE THIS MATTER FROM THE ACTIVE DOCKET.**

This the 3rd day of April, 2018.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge